Good morning, everyone. We have three argued cases on the calendar this morning and one motion to be argued. We also have two cases on submission. The cases on submission are Barros v. Barr and Bartolini v. Inspector Cassells, and we will take those cases on submission. I've been advised by the clerk that counsel are present in all cases, so I'm going to dispense with reading the calendar to save a little time this morning. And we'll start with the motion. Good morning, Your Honors, and may it please the Court. I'm Ashley Sommer of Nelson Mullins here on behalf of Appellant and Movement J.B. Weld. J.B. Weld has already begun complying with the prospective injunctive relief ordered by the district court, and it's not selling or distributing any products with the accused Muffler-Weld name on them. Here, J.B. Weld is only seeking a partial stay of the mandatory injunctive relief pending appeal that requires the recall or relabeling of its products that are already in the market. Isn't it about relabeling at this point, though, just the relabeling of about 30,000 in product? I believe that's correct, Your Honor. I believe our client's current plan would be if forced to comply with the relabeling. But as the evidence shows, J.B. Weld's business and business reputation will be considerably and irreparably harmed absent the stay pending appeal. And importantly, that evidence of harm to J.B. Weld is largely undisputed on the record. Instead, ITW asks this Court to ignore that harm to J.B. Weld as being self-inflicted. However, this Court's case law in dealing with stay motions compels requiring the harm at this interim stage to each party and balancing and weighing that in determining whether to issue a stay, not ignoring J.B. Weld's. And there is a finding of irreparable harm to your adversary because that's what prompted the injunction to begin with, right? That's correct, Your Honor. Okay. So you're arguing that the irreparable harm to you is greater than to them? They — I mean, as I understand it, you've basically stopped labeling your product this way for everything new, so the issue of the violation doesn't seem to really be in dispute. Your Honor, we will on the merits dispute the trademark infringement claim. But in terms of the stay request, we would submit that the brief stay for appeal, despite the irreparable harm finding, one, we would support. We're going to argue on the merits that it's not supported by the evidence, the irreparable harm to ITW, because there's no evidence in the record, evidence in the record, that ITW would be irreparably harmed by J.B. Weld's. That's, as you say, your merits argument. Right. You're saying you're likely to succeed on that? Yes, Your Honor, we are, due to the lack of evidence. ITW argued to the district court that its ability to control its reputation would be out of its control due to J.B. Weld's conduct. But that's an argument that would apply in every trademark case. And there's no evidence that that transpired here. But one of the concerns is the degree of to which the mark is identical here. I mean, in many trademark cases, we don't have it quite so stark. That's correct, Your Honor. And to the extent that the showing or the degree of showing to infringement in this case may have some sliding scale to reduce the amount of irreparable harm that may need to be shown, I would submit here it doesn't excuse. I may not have been clear. I was suggesting that it makes it almost impossible for you to argue that there wouldn't be consumer confusion when the mark you're using is almost identical to the mark that they've trademarked. Well, Your Honor, I would submit that in the context of the marketplace, when you're not looking at just those marks in isolation, and this is what we submitted to the district court and will argue on the merits, the products are very different appearances. J.B. Weld has its name on it, its brand, its long recognized color scheme, so that a consumer in the market seeing these very differently packaged products are not going to think J.B. Weld's product comes from ITW. It has J.B. Weld's long recognized branding on it, so they weren't going to be confused. But wasn't the district court's concern that the instead the consumer would be confused to thinking this was generic rather than a mark? Yes, Your Honor, and that goes back to the point, for the brief-stay pending appeal, this appeal has been expedited. It's going to be fully briefed by the beginning of March. And so this idea of generic side or substantial harm to ITW over the course of weeks, at the most two months while this appeal is decided, there's no evidence of any harm during that period of a brief stay, which we're here today to decide, that would befall ITW. Whereas, going forward with this relabeling provision would substantially and irreparably harm J.B. Weld's customer relationships, its reputation in the market, because it would have this stigma from this relabeling.  Couldn't you just ask AutoZone not to sell this stuff while you're arguing the appeal? I mean, one thing that would be even less intrusive than the recall is the relabeling. And even less intrusive than the relabeling would just say, put this stuff in the back. And then maybe in two months, you win on the merits, and they can all just come out. You don't even have to relabel. Yes, Your Honor, that's certainly a possibility. But the testimony from our client, which is really the only testimony in the record on that point, is that that would be very detrimental to their relationship with AutoZone, and it would be a bell that you can't unring. Once they have that stigma with AutoZone, it would affect their current products that aren't solidified in the store, their ability to place new products that they're attempting to place in AutoZone. So it's a bell that can't be unrung when you raise this issue in the state. Isn't it? I mean, don't they already know about it? Presumably, AutoZone knows that you're involved in this litigation, and there's been a finding of trademark violations. So it seems like in terms of the bell being rung, the bell's been rung. The only question is whether there's now someone who has to go around putting stickers on things. Your Honor, I don't know. There's no evidence in the record that AutoZone is aware. And so we would submit that the harm to the brief stay, the harm would be totally on J.B. Weld. There's no harm on this brief stay portion to ITW, and that in balancing those harms favors a stay in this case. Thank you. Good morning. May it please the Court. Jeffrey Babin of Wiggin and Dana for the Appellee. A customer walks into an AutoZone store, asks for muffler weld, and what they get, of course, is the appellant's product. As the trial court, Judge Meyer, found, it diminishes goodwill, diminishes control over the reputation of our product, and if that customer doesn't like it, they may never ask for muffler weld again. Judge Meyer found that we are an established product over 40 years of use of our Federally Registered Trademark. We sell hundreds of thousands of dollars of product over the course of a year at $8 to $10 per item, and that harm is continuing every day that this happens. Now, as my colleague here says, they've already have acquiesced in the preliminary injunction in terms of willing to relabel, and they, of course, then AutoZone will have to learn of that, and in the record, I don't have a site, we don't have an appendix numbers, but there is a contract with AutoZone which requires them to be notified if a product is going to be renamed. Judge Meyer engaged in a careful balancing. He found in the scheme of things that this is really little harm to J.B. Weld. Of course, they could simply hold the product, and if they are confident in victory, we could resell that same product later on. There's no requirement to destroy the product. And this is, of course, a situation where Judge Meyer found bad faith infringement, that the product on the shelf was all shipped to AutoZone after we had moved for a preliminary injunction. And just as important, there was a discussion of the merits, and the counsel says that they're going to dispute the merits, but in fact, nothing in their stay motion disputes the analysis under the Polaroid factors. That, therefore, at the end of the day, it seems quite certain that we will prevail, that there will be a Lanham Act violation, there will be trademark infringement. They do not argue otherwise. Therefore, Your Honors, given that this is the same name, that there is continuing harm to our goodwill, our reputation, and that the differences they talk about, the packaging differences, Judge Meyer found those were not relevant in the circumstances of this case, the way this product is sold, and the way people may ask for the product. Therefore, we ask that the preliminary injunction immediately be allowed to go forward as Judge Meyer required, that they be required to immediately notify AutoZone. They have a choice. They can ask to take the product off the shelf. They already are relabeling the product being shipped. They have labels ready to go, and they should be required expeditiously to proceed forward. Sotomayor, does denying them a stay also effectively deny them an appeal? I mean, there's a suggestion that once they either bring back the product or more That's basically it, and there is no really significant challenge for them to appeal no significant ability for them to appeal the preliminary injunction. Well, Your Honor, I think that they would still have an appeal. The fact that they've even agreed to go ahead and relabel their product Muffler Seal, which is a perfectly appropriate name, and already shipping that product is acknowledgment that they will still be able to proceed if they can prevail. And I don't think under these circumstances that they've even shown much faith in their ability to prevail. They could bring back the name. Assuming just for the moment that they did prevail, what would they have to do then? Take the labels off? Is that? Well, they could just choose to sell the product that has the Muffler Seal and then just tell AutoZone we've, you know, we're going back to Muffler Weld. That's their choice. And I think that there's no evidence that that is any significant harm. Judge Meyers certainly did not think so. Did you have to post a bond in the case that covered the costs of their doing whatever recall or relabeling? I didn't see that. There was no motion for bond, Your Honor. They say that they plan on filing one. We haven't seen one yet. If nothing else, I'll rest. Thank you. Thank you both. And we'll take it under advisement.